| | | |
|---|---|---|
| ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY, | ) ) | |
| | ) | |
| Plaintiff, | ) | 2:25-CV-00080-DCLC-CRW |
| | ) | |
| v. | ) | |
| | ) | |
| JENNIFER M. SCHALL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint for Declaratory Relief. [Doc. 14]. Plaintiff responded. [Doc. 20]. For the reasons below, Defendants' Motion [Doc. 14] is **DENIED**.

## I.    BACKGROUND

Plaintiff, Allstate Property and Casualty Insurance Company ("Allstate"), filed this action, under 28 U.S.C. §§ 2201 and 2202, seeking a declaratory judgment that the Tennessee uninsured motorist policy it issued to Defendants, Jennifer and Daniel Schall, does not cover damage to their South Carolina rental property. [Doc. 1, ¶ 1].

This dispute arises from an underlying lawsuit in South Carolina state court. On September 26, 2020, Kenshun Murphy, while driving a vehicle owned by Maricel Galarza, crashed into Defendants' rental property in South Carolina. [Doc. 15, pg. 2]. On September 25, 2023, Defendants filed suit in South Carolina state court against Murphy and Galarza for negligence and obtained a default judgment for $258,447.82 on December 20, 2024.[1] [Doc. 1-1]. Both the driver

---

[1]    *See Daniel Even Schall, et al. v. Kenshun Murphy, et al.*, Case No. 2023-CP-4203583

and the vehicle owner were uninsured at the time of the accident.  [Doc. 15, pg. 2].  Defendants filed an uninsured motorist claim for the property damage, and on December 9, 2024, the South Caolina Department of Insurance served Allstate in the state-court action.  *Id.* at 3.

Allstate then initiated this action on May 15, 2025.  [Doc. 1].  Allstate alleges that it has issued 11 active policies with Defendants.  *Id.* ¶ 7.  One policy insures the rental property in South Carolina, but the policy at issue here is a Tennessee automobile policy covering three vehicles garaged in Tennessee at 754 Oak Grove Road (the "Policy").  Allstate alleges that this Policy was reissued in South Carolina on July 2, 2022, reflecting a change in the vehicle's garage location, almost two years after the loss that occurred on September 26, 2020.  *Id.*

## II.     ANALYSIS

Defendants have moved to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction; Rule 12(b)(2) for lack of personal jurisdiction; Rule 12(b)(3) for improper venue; and Rule 12(b)(6) for failure to state a claim upon which relief can be granted. [Doc. 14].  The Court will address each argument in turn.

### A.     Subject Matter Jurisdiction

Defendants move to dismiss under Rule 12(b)(1), making several arguments that do not meaningfully challenge this Court's subject-matter jurisdiction.  None has merit.

#### 1.     Legal Standard

When subject matter jurisdiction is challenged under Rule 12(b)(1), "the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986).  A Rule 12(b)(1) motion may present either a facial attack or a factual attack.  *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).  A facial attack questions the sufficiency of the pleadings, and the Court accepts well-pleaded

allegations as true. *Id.* A factual attack, by contrast, permits the Court to weigh evidence and resolve disputed jurisdictional facts. *Id.*

### 2. Analysis

Defendants invoke the *Penn General* doctrine, arguing that the South Carolina action is an in rem or quasi in rem proceeding that precludes this Court's exercise of jurisdiction in this case. That argument fails from the start. Neither the South Carolina action nor this case is an in rem or quasi in rem proceeding. The South Carolina action is a tort suit resulting in a money judgment, and this case concerns insurance coverage. Neither involves adjudication of title to, or control over, specific property. Accordingly, the *Penn General* line of cases is inapplicable. *See* [Doc. 15, pgs. 4–7].

Allstate's reliance on the Declaratory Judgment Act, 28 U.S.C. § 2201, to confer jurisdiction is also not sufficient. [Doc. 21, pg. 5]. That Act is procedural only and does not independently confer subject matter jurisdiction. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 282, 286–87 (1995); *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72 (1950). But an independent basis for jurisdiction does exists here: diversity jurisdiction. *See* [Doc. 1, ¶ 4]; 28 U.S.C. § 1332. Allstate alleges that it is a citizen of Illinois, Defendants are citizens of South Carolina, and the amount in controversy exceeds $75,000. [Doc. 1, ¶ 4]. Defendants do not contest these allegations, and they are sufficient to trigger this Court's subject matter jurisdiction.

Defendants also argue the Complaint should be dismissed based on the *Colorado River* abstention doctrine under Rule 12(b)(6) for failure to state a claim. *Colorado River* abstention does not apply. This is a declaratory judgment action, and the Sixth Circuit has made clear that "the *Colorado River* abstention doctrine framework does not apply where the federal court action is one for a declaratory judgment." *Boyd v. Martinez*, No. 22-6026, 2023 WL 4903173, at *4 (6th

Cir. Aug. 1, 2023).  Defendants' abstention argument therefore fails, and Defendants' motion is **DENIED** on that ground.

### B.        Personal Jurisdiction

Defendants move to dismiss under Rule 12(b)(2), arguing that the Court lacks personal jurisdiction because they are residents of South Carolina and the insured vehicle at issue was purchased and registered there before Allstate sold them insurance coverage.  *See* [Doc. 15, pgs. 10–11].  Defendants again raise their arguments about in rem and quasi in rem proceedings, which, for the reasons already explained, are inapplicable.  *Id.*  Allstate responds that personal jurisdiction is proper because Defendants own property in Tennessee and insured three vehicles under the Policy at that Tennessee address.  *See* [Doc. 21, pgs. 11–12].

### 1.        Legal Standard

The plaintiff must first establish personal jurisdiction.  *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504 (6th Cir. 2020) (citing *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988)).  A district court has discretion in how it resolves a Rule 12(b)(2) motion to dismiss.  *Id.* at 505.  Where, as here, the Court resolves the motion on written submissions without an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdiction, and the Court must view the pleadings and evidence in the light most favorable to the plaintiff.  *Id.*

In the motion to dismiss, Defendants have not requested jurisdictional discovery or an evidentiary hearing.  *See* [Docs. 14, 15].  The Court declines to hold a pretrial evidentiary hearing. The motion will be resolved on the existing record. [Docs. 1, 20, 21].

### 2.        Analysis

In diversity cases, personal jurisdiction exists only if it is authorized by the forum state's long-arm statute and consistent with due process.  *Carbone v. Kaal*, 140 F.4th 805, 809 (6th Cir.

2025).  The inquiry involves two steps: (1) the defendant must be subject to service of process under the forum state's long-arm statute; and (2) the exercise of personal jurisdiction must be consistent with the Due Process Clause.  *AMB Media, LLC v. OneMB, LLC*, No. 23-5607, 2024 WL 2052151, at *2 (6th Cir. May 8, 2024) (citing *Bridgeport Music, Inc. v. Still N the Water Publ'g*, 327 F.3d 472, 477 (6th Cir. 2003)).  Because Tennessee's long-arm statute reaches as far as federal due process allows, the Court's analysis turns on whether exercising personal jurisdiction over Defendants satisfies constitutional requirements.  *Id.*; *see* Tenn. Code Ann. § 20-2-225; *Gordon v. Greenview Hosp., Inc.*, 300 S.W.3d 635, 646 (Tenn. 2009).

Due process permits a court to exercise personal jurisdiction over an out-of-state defendant when that defendant has "minimum contacts" with the forum state such that exercising jurisdiction comports with "traditional notions of fair play and substantial justice."  *Carbone*, 140 F.4th at 809–10 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  Personal jurisdiction is either general or specific.  *Id.* at 810.

### a.  General Jurisdiction

General jurisdiction exists only when a defendant's contacts with the forum state are "so continuous and systematic" that the defendant is essentially "at home there."  *Carbone*, 140 F.4th at 810. (citation omitted).  That standard is not met here.  Allstate argues that general jurisdiction exists because Defendants have owned property in Tennessee for the last 11 years.  [Doc. 21, pg. 12].  That cannot by itself confer general jurisdiction on this Court.  Property ownership "does not establish a sufficient relationship between the owner of the property and the State to support the exercise of jurisdiction over an unrelated cause of action."  *Conn v. Zakharov*, 667 F.3d 705, 719 (6th Cir. 2012) (quoting *Rush v. Savchuk,* 444 U.S. 320, 328 (1980)).  General jurisdiction is therefore lacking.

### b. Specific Jurisdiction

Specific jurisdiction exists when the plaintiff's claims "arise[] out of or relate[] to the defendant's contacts with the forum." *Carbone*, 140 F.4th at 810 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)). The Sixth Circuit has established a three-part test for specific jurisdiction, commonly referred to as the *Mohasco* test. *Id.* (citing *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)). Under that test, exercising personal jurisdiction satisfies due process only if: (1) the defendant purposefully availed itself of "the privilege of acting, or causing a consequence" in, the forum state; (2) the plaintiff's claims arise from the defendant's forum-related activities; and (3) the defendant's conduct has "a substantial enough connection" with the forum state to make the exercise of jurisdiction reasonable. *Id.* Each element is essential; if any one of the three is not met, specific jurisdiction does not exist. *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1303 (6th Cir. 1989) ("failure to meet any one of the three means that personal jurisdiction may not be invoked").

Each element is satisfied here. First, Defendants did more than maintain passive contacts with Tennessee. They elected to insure three vehicles under a policy expressly tied to a Tennessee garage location and agreed to be governed by Tennessee law. In doing so, they invoked the benefits and protections of Tennessee law with an ongoing contractual relationship in Tennessee. In other words, they deliberately engaged in activity directed at Tennessee. *See* [Doc. 20-1, pg. 5; Doc. 20-2, pg. 7; Doc. 20-3; Doc. 20-4; Doc. 20-7]. These were not "random," "fortuitous," or "attenuated" contacts but they deliberately structured their insurance relationship around Tennessee with respect to these vehicles. *Intera Corp. v. Henderson*, 428 F.3d 605, 616 (6th Cir. 2005) (quoting *Neal v. Janssen*, 270 F.3d 328, 331 (6th Cir. 2001)).

Second, Allstate's declaratory judgment action arises directly from the insurance contract. This case seeks a declaration of rights under the Policy: whether a Tennessee uninsured motorist policy covers the claimed loss in South Carolina. And filing such an action is not only permissible but a common procedure to resolve issues such as coverage questions. *See Western World Ins. Co. v. Hoey*, 773 F.3d 755, 761–63 (6th Cir. 2014); *Assurance Co. of Am. v. Cont'l Dev. & Constr., Inc.*, 392 Fed. Appx. 472, 475 (6th Cir. 2010). This dispute then flows from the Policy itself and addresses the risks the Tennessee policy insured against. The issue is one of contract interpretation under a policy originating in Tennessee and governed by Tennessee law.

Third, exercising jurisdiction is reasonable. Defendants created a continuing insurance relationship directly tied to Tennessee and could reasonably anticipate being brought into court here to resolve any contract disputes involving that policy. And Tennessee has a legitimate interest in resolving disputes involving insurance contracts governed by its own law. *See Carbone*, 140 F.4th at 809–10.

Accordingly, the Court concludes that it has specific personal jurisdiction over Defendants, and their motion to dismiss under Rule 12(b)(2) will be **DENIED**.

### C. Venue

Defendants move to dismiss for improper venue under Rule 12(b)(3) and alternatively seek transfer based on forum non conveniens, arguing that all the witnesses and other evidence related to this action are in South Carolina. [Doc. 15, pgs. 11–12]. Allstate argues that venue is proper here and that the Policy contains a forum selection clause that mandates any lawsuits related to the Policy shall be brought in Tennessee federal or state court. [Doc. 21, pgs. 12–14]. Allstate further contends that this coverage issue does not concern the damages in South Carolina and besides Defendants, any witnesses are in Tennessee from the local insurance agency. *Id.* at 14–15.

7

Defendants conflate a motion to dismiss for improper venue under Rule 12(b)(3) and a motion to change venue under the doctrine of forum non conveniens pursuant to 28 U.S.C. § 1404(a).  *See* [Doc. 15, pgs. 11–12].  The Court must distinguish between the two.

### 1.  Rule 12(b)(3) – Improper Venue

Rule 12(b)(3) provides the procedural vehicle for raising the defense of improper venue. Fed. R. Civ. P. 12(b)(3).  On a motion to dismiss under Rule 12(b)(3), "the plaintiff bears the burden of proving that venue is proper. The Court may examine facts outside the complaint but must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff." *Audi AG & Volkswagen of Am., Inc. v. Izumi,* 204 F. Supp. 2d 1014, 1017 (E.D. Mich. 2002).  Venue is governed by 28 U.S.C. § 1391(b), which permits a suit in the district where "a substantial part of the events or omissions giving rise to the claim occurred…."  28 U.S.C. § 1391(b)(2).

Venue is proper in this district.  A substantial part of the events occurred in this judicial district.  *See* 28 U.S.C. § 1391(b)(2).  The Policy was issued through Defendants' agent located in Bristol, Tennessee, and Defendants' vehicles covered under the Policy were garaged at 754 Oak Grove Road in Johnson City, Tennessee.  *See* [Doc. 20-4].  These events constitute a substantial part of the events giving rise to this declaratory judgment action.  Accordingly, the Court will **DENY** Defendants' motion to dismiss under Rule 12(b)(3).

### 2.  Transfer under 28 U.S.C. § 1404(a)

While venue is proper here, Defendants raise the alternative argument that the case should be transferred under 28 U.S.C. § 1404(a).  A district court may, for "the convenience of parties and witnesses" and "in the interest of justice," "transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  A motion to transfer under § 1404(a) is the appropriate

mechanism to enforce a forum selection clause. *Atl. Marine Const. Co., Inc. v. United States Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 52 (2013). In determining whether to transfer the case, the court should consider "the private interests of the parties, including their convenience and the convenience of potential witnesses," public-interest concerns, and whether the transfer is in the interests of justice. *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991). But that analysis changes when the case involves a mandatory forum selection clause. This is because the "presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis…" *Atl. Marine,* 571 U.S. at 63. "Only under extraordinary circumstances unrelated to the convenience of the parties" should a court decline to enforce a forum-selection clause. *Id.* at 62.

This case involves a mandatory forum selection clause, which provides "any and all lawsuits in any way related to this policy shall be brought, heard, and decided only in a state or federal court located in Tennessee." [Doc. 1, ¶ 9; Doc. 1-3, pg. 39]. And, most importantly, Defendants do not challenge the validity or enforceability of this forum selection clause. Plaintiffs filed this action exactly in the forum provided for in the insurance contract. Typically, courts will engage in an extensive analysis when such clauses are challenged. *See Atl. Marine*, 571 U.S. at 61–63; *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009). Because Defendants lodge no challenge to it, no such analysis is necessary.

Defendants' argument that witnesses and evidence relating to the underlying accident are located in South Carolina carries no weight here where the dispute is about the interpretation of an insurance contract. The underlying accident is relevant only to the degree that it triggered the coverage dispute; it does not define the locus of this action. Any witnesses relevant to the formation or how claims are handled under the Policy are in Tennessee. Tennessee has a public

9

interest in resolving disputes involving insurance contracts governed by Tennessee law. Defendants have not met their burden to overcome the forum-selection clause and transfer is unwarranted.

### D. Discretionary Jurisdiction

Even where jurisdiction exists, federal courts have discretion over whether to exercise jurisdiction in declaratory judgment actions. The Supreme Court has "repeatedly characterized the Declaratory Judgment Act as 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.'" *Wilton*, 515 U.S. at 287 (quoting *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952)). In exercising this discretion, courts in the Sixth Circuit must apply five factors: (1) whether the judgment would settle the controversy; (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata"; (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective. *U.S. Fire Ins. Co. v. Albex Aluminum, Inc.*, 161 F. App'x 562, 564 (6th Cir. 2006) (quoting *Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984)). Although Defendants did not raise these *Grand Trunk* factors, Allstate included them in its response, and the Court will apply them here because failure to do so constitutes reversible error. *Id.*

#### 1. Settlement of the Controversy

The first factor is whether the Court's declaratory judgment would settle the controversy. In *Scottsdale Ins. Co. v. Flowers*, the Sixth Circuit addressed its divergent approaches on how to treat this factor in insurance cases:

> Two lines of precedent seem to have developed in our jurisprudence regarding consideration of this first factor in the context of an insurance company's suit to determine its policy liability. … The difference between these lines of cases appears to rest on the competing policy considerations of consolidating litigation into one court versus permitting a party to determine its legal obligations as quickly as possible.

513 F.3d 546, 555 (6th Cir. 2008) (internal citations omitted). The *Scottsdale* court noted that factual considerations also helped explain the different lines of cases and concluded that the district court had adequately resolved all controversies between the parties "because the only controversy between them regarded the scope of the insurance policy." *Id.* at 556. The same is true here. The only issue before this Court is the scope of Allstate's Policy and whether Defendants' South Carolina rental property is covered. The first factor points toward the exercise of jurisdiction.

### 2. Clarification of the Legal Relations at Issue

The second factor to consider is whether the Court's judgment would clarify the legal relations at issue. This factor is closely related to, and often considered along with, the first factor. "Indeed, it is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue." *Scottsdale*, 513 F.3d at 557. This Court is appropriately situated to determine the issue of Allstate's coverage obligations under the Policy and can therefore clarify the legal relations between the parties. This second factor favors exercising jurisdiction.

### 3. Race for Res Judicata

The third factor to consider is whether using the declaratory judgment action is motivated by "procedural fencing" or likely to create a race for res judicata. *Id.* at 558. As raised by Allstate in its response, Allstate was not joined or served in the state court case that was originally filed on September 25, 2023 until December 2024. [Doc. 21, pg. 7]. Allstate did not file this matter until May 15, 2025. [Doc. 1]. The question under this factor is "whether the declaratory plaintiff has

filed in an attempt to get her choice of forum by filing first." *AmSouth Bank v. Dale,* 386 F.3d 763, 789 (6th Cir. 2004). There is no indication that Allstate has engaged in any "procedural fencing," and courts are "reluctant to impute an improper motive to a plaintiff where there is no evidence of such in the record." *Scottsdale*, 513 F.3d at 558. This factor is neutral – it neither weighs in favor nor against exercising jurisdiction.

### 4. Increased Friction Between Federal and State Courts

The fourth factor to consider is whether accepting jurisdiction would increase friction between federal and state courts. The Sixth Circuit has developed three sub-factors for consideration on this issue:

> (1) whether the underlying factual issues are important to an informed resolution of the case;
>
> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
>
> (3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Id.* at 560.

As to the first two factors, there are no outstanding factual issues for the state court to decide that would bear upon this Court's determination of Allstate's declaratory judgment action. It has determined liability regarding the damage to Defendants' South Carolina rental property and entered a default judgment. Moreover, the underlying factual issues have no bearing on the Court's determination of contractual interpretation questions.

The third factor also favors exercising jurisdiction. The Policy provides that "any and all claims or disputes in any way related to this policy shall be governed by the laws of Tennessee." [Doc. 1, ¶ 9]. In diversity cases, courts apply the choice-of-law rules of the forum state, Tennessee.

*State Farm Mut. Auto. Ins. Co. v. Norcold, Inc.*, 849 F.3d 328, 331 (6th Cir. 2017). Under Tennessee law on contract disputes, courts generally honor the parties' agreement as to the choice of substantive law. *See Boswell v. RFD-TV the Theater, LLC*, 498 S.W.3d 550, 556 (Tenn. Ct. App. 2016); *see also Se. Tex. Inns, Inc. v. Prime Hosp. Corp.*, 462 F.3d 666, 672 (6th Cir. 2006). Allstate contends that the Policy is governed by Tennessee law and Defendants do not dispute the validity of this provision. The Court agrees that Tennessee law applies. Because the South Carolina state court does not have an interest in identifying and applying the public policies of Tennessee law, the third sub-factor favors exercise of jurisdiction. As a result, all three sub-factors, and consequently the fourth *Grand Trunk* factor, support exercising jurisdiction.

### 5. Availability of Alternative Remedy

Under the fifth factor, the Court should "deny declaratory relief if an alternative remedy is better or more effective." *Grand Trunk*, 746 F.2d at 326. The Court sees no alternative remedy that is better or more effective. The South Carolina state court is not better situated than this Court to resolve questions of Tennessee state law. Because Allstate has no superior options to this action, the Court finds that the fifth *Grand Trunk* factor supports an exercise of jurisdiction.

### 6. Balancing the Factors

The Sixth Circuit has "never indicated how these *Grand Trunk* factors should be balanced." *Scottsdale*, 513 F.3d at 563. But the balance here tilts toward an exercise of jurisdiction. The first, second, fourth and fifth factors favor exercising jurisdiction, and the third is neutral. On balance, the Court concludes that exercising jurisdiction over Allstate's declaratory judgment action is appropriate.

## III.  CONCLUSION

For all these reasons, Defendants' motion to dismiss [Doc. 14] is **DENIED**.  The Court shall exercise jurisdiction over Allstate's declaratory judgment action.

**SO ORDERED:**

s/Clifton L. Corker
United States District Judge

Case 2:25-cv-00080-DCLC-CRW     Document 29     Filed 03/30/26     Page 14 of 14
PageID #: 590